Our fifth case of the day is number 14-2069, United States v. Curtis. My name is Franklin Gimbel and I am here today representing the defendant-appellant George Curtis. George Curtis is a 78-year-old lawyer who practices and continues to practice personal injury law in Oshkosh, Wisconsin. He is a lawyer who has had great success based on what was developed during the record, both in terms of those witnesses who testified as to his character and as to his taxable income. This case is one which was charged in June of 2013. In January of this year, we appeared before Judge Griesbach in Green Bay, Wisconsin to face a jury on three counts of the allegation that Mr. Curtis had intentionally failed to pay his income taxes for the years 2007, 2008, and 2009. An obvious theory of defense that was urged from the get-go of this trial was that for the jury to make a reasonable decision on whether or not Mr. Curtis acted with that intent that's required to find that his non-payment of taxes for the charged years were intentional under the criminal instructions, one had to look first at his history with the IRS. And within the brief submitted on behalf of Mr. Curtis, there is an appendix. And on page 120 of the appendix, there is what was received in the court by stipulation, exhibit number 1000. And this is one of the issues that are here before you today, because it is an exhibit that demonstrates a relationship that existed between Mr. Curtis and the IRS, which was extraordinarily unique. It certainly was unique from the perspective of his lawyer, me, who has practiced for 54 years, five of those years as a federal prosecutor myself, because if you look at the document, exhibit number 1000, you will see that for the years prior to the charged years within which Mr. Curtis did not pay income taxes attributed to his obligations for those years, he paid an on what his tax obligations were of $1,754,998. I'm looking at it, I don't see those numbers. Those are my addition and subtraction. Okay, if you look at exhibit, if you take the tax in a column two, and add them up through 2006, which shows the tax obligation that he incurred for the years 1996 through 2006, the mathematics of that will bring you to the number of $1,754,998. And then if you look at the amount of taxes, the total that he paid for that same period of time, adding up in the column that says total paid, the number that you get would be $1,973,770. So it was, it's about $400,000 more paid than what his taxes were, because as you can see in the exhibit, during each and every one of these years, he was tardy. The tardiness occasioned him to incur a liability for interest and penalties, and as a result of his tardiness, he got himself into a, what I will call a creditor-debtor relationship with a representative of the IRS. And two agents in particular were agents with whom he worked from the period beginning in 1996 until just before the time of the charged years, and during those years when Mr. Curtis was interacting with a revenue officer for the Internal Revenue Service, he was making payments and notwithstanding the fact that the payments were short of his entire obligation, as he was going down that road of behind in his payments, he was incurring substantial penalties and interest, all of which the Internal Revenue made decisions on how to apply to his tax obligations looking backwards. So they were just, what, acquiescing to the fact that he was always late and they were willing to accept the penalties and allow him to pay late and pay more, is that it? That's correct. Okay, so that's the unique relationship, I guess. It's a very unique relationship. I've never seen anything like it. I don't know what you did. You've been representing him all this time, I guess. What it tells me is that Mr. Curtis worked to his own disadvantage by not finding a way to pay his taxes in a timely fashion. Well, he paid zero in 2007, 8, and 9, correct? He paid zero that was credited to him in those years. If you look on that in the year 2007, a piece of real estate that he owned and upon which the IRS had a lien was sold to the benefit of the IRS for $193,770, and that money was applied by the IRS to cover his tax and penalty and interest obligations for the years 2005 and 2006, which is also indicated on this It's also taking a look at Exhibit 144, which I think the government prepared as a summary of personal expenditures during those years, which I think may be relevant at least to the question of harmless error and how significant this 404B evidence was. Taxable income of about $1.2 million over the three years. $42,000 paid for a car, $18,000 paid for wine, $143,000 paid for life insurance, $32,000 paid for donations and political contributions, $4,000 for firearms, $11,000 for Correct. However, to your question, and it's a very relevant question because I expect the government to get up here and talk harmless error, because very clearly if you look at the behavior of Judge Griesbach and Mr. Jacobs before and during the trial with respect to the 404B evidence, I think that it's a per se, essentially, violation by them of the Gomez standard for reviewing the admissibility of 404B evidence, but... Well, let me... I'd like to talk with you about that, but you go ahead. No. So why is this not harmless error? That's the essence of your question, and I want to answer that. It's not harmless error because the moment that this jury heard that George Curtis was tardy in recent tax obligations, he was toast in terms of his ability to get the jury to look at whether or not he really had an intent back in 07, 08, and 09 to violate the criminal law in not paying taxes when he had this history of having this civil relationship with the IRS, and nothing gave him a warning that, okay, now we're taking a different road, Mr. Curtis. We're now not looking at collecting your taxes, collecting interest, and collecting penalties. We want to prosecute you and put you in jail, and when he with the IRS so that he could begin again to work with them to address his tax obligations on an ongoing basis, nobody returned his phone calls, and that was clarified when the special agent in this case testified that he put a stop order on anybody in the Internal Revenue Service talking to him during the investigation, which he did not become aware of until he became aware of the criminal investigation. Well, he said all his taxes were current when he testified, and then they brought up the failure to withhold. We didn't tell him. No, correction. Well, he had some kind of a passive statement. What happened was I was interrogating Mr. Curtis about exhibit number 1,000, and I said, since the charge years in 2010, you have filed your returns and you have paid those taxes, and he said, according to the record, yes, the record we were talking about very clearly is exhibit number 2,007, and if you look at Isn't that the kind of contextual judgment that a district judge has to make? Not if you read your own decision in Gomez. I think the judge has to go beyond that, and I think the judge made a wrong turn here because he made the global assumption that payroll taxes, income taxes, the jury doesn't know the difference. You've opened the door to it. Yeah, and with respect to Gomez and whether there was an error at all, I've got to tell you, I look at this and it's self-evident how the judge reached the conclusion here. The judge keeps the 2013 payroll tax evidence out until your guy claims the moral high ground, and the judge then decides to allow a rebuttal of that to prevent undue prejudice to the government. That reasoning is transparent. I don't agree, Your Honor, that he took the moral high ground. All he said was, I paid my income taxes in the years after the charge years. He didn't take the moral high ground because he says in his testimony, I still owe money on those years that I'm being charged with, and that's in his testimony as well. So he's not taking the moral high ground and says, I'm now clean across the board with the IRS. He's saying I paid those three years or two years after the charge years, but he acknowledges in his testimony that he still owes money on the 2007, 2008, and 2009. And so I just disagree with the characterization that his testimony was taking the moral high ground that had to be to give the government another crack at him by saying that you've got this payroll tax situation. A couple of quick other matters. Let me just quickly ask you this. I'm sorry, Judge Hamilton, were you done? I'm not, but go ahead and I'll follow up. No, no, you go ahead. Well, with respect to the jury instruction issue. Yes. That was going to be my question. Go ahead. In Pomponio, the Supreme Court summarily reversed the Fourth Circuit for doing what it seems that you were asking us to do. Yes. And are there any cases after Pomponio that you know of finding reversible error for failure to instruct a jury in tax evasion cases that bad motive was required? No. But I want this court to reinstate that instruction in a case like this because this is a very unique fact situation where willfulness really was something that my client could logically say through his lawyer to this jury was not intended to be criminal misconduct. I was here working with the government to pay them my taxes, pay them my penalties, pay them my interest, and all of a sudden they closed the store and I no longer had an audience. Okay. One last question, if I could. Page 13 and 14 of your reply brief, you say a conviction under Curtis' unique circumstances essentially subjects him to debtor's prison for his inability to dig himself out of the impossible hole that the IRS dug for him. I read that and, frankly, my jaw dropped. Hole that the IRS dug for him? That's probably a bad choice of words. What he did is dug a hole for himself. And the application by the IRS of interest that was far beyond market rates and the penalties that they imposed really had an accumulating effect that made it almost impossible for him to get even on the scorecard. So it was his behavior, but his behavior occasioned this triggering of these what I think are somewhat draconian financial consequences that flowed to him in a punitive sense, unquestionably, and it's intended for that, to encourage pay your taxes on time. But in his sense, looking at this broader picture of where he was from 1996 through the charge years, he was pouring hundreds of thousands of dollars into the IRS, albeit at a time when he had other expenses to survive. But he was also incurring taxable income, which nobody says was not properly reported, and paying the government in a way that, if not on time, was in accordance with deals that he made with revenue agents speaking for the government until they closed the door on him. Okay. Thank you. Very much. Thank you. Thank you very much. May it please the Court, I am Matthew Jacobs. I represent, obviously, the United States and represented them at trial below. Your Honors, with respect to the evidence concerning Mr. Curtis's failure to pay payroll taxes, that evidence only came up once the defendant testified and introduced evidence on cross-exam concerning his subsequent tax compliance, I'll call it. He introduced evidence that he paid his income taxes for 2010 through 2012, testified that his taxes were fully paid. The government, therefore, believed it was only fair to correct that potential misimpression because that's false. The defendant hadn't paid his payroll taxes, not just withholding them from his employees, but paying his share, employer's share of those taxes. Well, can you lead me through the chain of reasoning that connects the payroll tax evidence to the defendant's intent some four or five years earlier? I have had difficulty seeing how this evidence would be relevant except as propensity. Your Honor, we did not introduce it as intent evidence. Again, it was introduced only on cross-examination and only used to refute the defendant's testimony that his taxes were fully paid, as well as a suggestion that his subsequent tax behavior showed compliance and suggested good faith. Now, it's true the government initially proposed to introduce that evidence as intent evidence. This court and other courts have said other acts, evidence such as other tax violations, is admissible. In specific intent crimes such as failure to pay income taxes, the court rejected that, though, and so the government accepted the court's ruling and did not introduce it as intent evidence, at least based on this court's rulings. The government believed that was legitimate intent evidence. I think in this case in particular, the chain of events would go something like this. The defendant argued that he had a good faith misunderstanding that eliminated his willfulness. Again, I'm interpreting a little, but I believe the argument was, had the defendant known he would be criminally prosecuted for failing to pay his taxes, he would have paid them, and therefore his failure, he didn't mean to commit a crime. I mean, he acknowledged on direct testimony as well as cross that he knew he owed the taxes. He filed tax returns saying, I made $1.2 million, $1.4 million during these three years. I owed $378,000. He signed tax returns saying all that. It was undisputed that he spent $1.1 million during those three years and literally paid none towards those taxes. Nonetheless, his argument appeared to be that I didn't think I'd be criminally prosecuted for it. I knew I was required to. I knew I wasn't doing it. I knew I was spending the money on other things, but nonetheless, sort of a good faith, had I known they were charging me with a crime, I would have paid the taxes. And so the government argued that the fact that after indicted, after being indicted in this case and being charged with willfully failing to pay his taxes, so then being made well aware that failing to pay his taxes is a crime, in 2013, really while preparing for trial, he again, knowing it's a crime not to pay taxes, doesn't pay his payroll taxes, belies or undermines a claim of good faith. That it's false that had he known to be charged with a crime, he would have paid it because he has been charged with a crime and still is not paying his payroll taxes. So it's in that way that the government believed the evidence should have been admissible as intent evidence, but that's not how it was admitted. It's not obvious to me why the defendant's testimony about the payments he made in 2010, 11, and 12 was relevant. Right. I think even the judge may have recognized that, that really, I mean, the defendant thinks his subsequent tax conduct is relevant. He thinks it shows he lacks intent. So the defendant, by introducing his subsequent payments, again, I argue, the government argues in its brief that really it's just a veiled attempt at jury nullification. The defendant acknowledges, I know I owe these taxes. I know I haven't paid them. Heck, I filed a return saying I haven't paid them, and I've spent the money on other things. And so he really has acknowledged guilt, but he's trying to engender a good faith, I'm a decent guy, I'm a good human being, all of which could be true, but it's not really a defense. So he tries to show, hey, in these later years, I'm paying all my taxes. And it's really in response to that that the government says, that's not a fair representation of who this defendant is. He is sort of trying to take the moral high ground that once they told me it was being investigated, I paid my taxes, and that it just was not a complete picture, that in fact during that same period of time he quit paying the payroll taxes that were his personal obligations to pay. The court was concerned that Curtis' testimony created a misimpression that he was current on his taxes, when in fact, you know, he hadn't paid the 2013 payroll taxes. But his testimony was that he was paid up for 2010 through 2012. And that was true. Unless I am missing something, he said nothing about 2013. And if his testimony was literally true, where was the misimpression here? Well, the one thing I will say, Judge, his testimony actually was just that he was current as to his taxes. The documents that were introduced only pertain to the years 2000, the subsequent years, 2010 to 2012. But it's also worth noting that the 2012 taxes were not paid until October of 2013, so that to the extent he's saying I'm making current payments, it's really contemporaneous with the period of time covered by the payroll taxes, the third and fourth quarters of 2013. So he was really taking credit for paying some taxes during 2013, and sort of keeping from the jury the fact, well, I'm not paying others. So, you know, he wants the best of both worlds. I want the jury to think that I'm a good guy, I'm making a good faith effort, I'm paying my taxes, and keep away sort of by selectively picking which taxes I'm going to tell the jury about. And I think the judge saw that as given that they're happening really contemporaneously, simultaneously, as I say, third and fourth quarters of 2013 and that income tax is being paid finally in October of 2013, I think is what it says on Exhibit 1000. I'm going to take you way back to the beginning of the argument for a moment. Would you concede that the district court did not engage in the Rule 403 balancing test when it decided to admit the payroll tax evidence? I don't think it expressly did. Well, it did. Right, but I can't identify any unfair prejudice. What, because the evidence itself... But that alone, wouldn't that alone have been error under Gomez? Well, I know... I mean, not to have weighed? That is, I know the court says in Gomez that they should conduct this balancing, but I cannot even conceive of any, and none's been identified. What's the unfair prejudice? It's fair to point out that he hasn't paid his taxes, and so what's the unfair aspect of that? I don't know what that is. I will say, as Judge Hamilton mentioned, the evidence against the defendant was strong. That is, he filed tax returns acknowledging substantial income, $1.4 million, substantial tax obligations, $378,000. He paid $0, and during that same 3-year period of time, spent more than $1.1 million on other personal expenditures. The defendant testified he was aware of his obligation, that he owed the taxes, that he was required to pay those taxes, and that he didn't because he spent the money on other things. So, again, I agree the evidence was strong, but I would say in the context of what was happening there, I think the judge saw this was fair response to the defendant's selective representation of what taxes he had paid for a contemporaneous period of time, and that no one has identified any unfair prejudice, and that further, to the extent there was any unfair prejudice, the defendant expressly rejects any curative instruction, any limiting instruction, and while it may be his option to forego an instruction, the consequence of that is to really waive any claim that there was unfair prejudice. Either that, or we just say that your instructions mean nothing, and we shouldn't give them at all. Anyway, unless the court has any further questions of me, I will rely on the government's screen. Well, thank you very much, Mr. Chambers. And now... I have a very, very brief rebuttal, if I may, Your Honor. Surely, Mr. Kimball. Thank you very much. If you look at appendix page 109 and read the exchange between myself and Mr. Curtis, that Judge Griesbach say, open the door to the government coming back and putting in this 404B evidence. The question that I ask Mr. Curtis on line 12 is, and as exhibit number 1,000 indicates, and do you have that in front of you? Answer, I do. Question, your tax obligations for the years 2010, 2011, and 2012 are fully paid. Is that correct? Answer, that's what the record shows. Question, and do you still have significant obligations with respect to the charged years here and some obligation with respect to the couple of years earlier than that? Is that also true? Answer, that's what the record shows. So essentially, what Judge Griesbach has used as a trigger to say now you, Attorney Kimball, have opened the door to letting in 404B evidence because he has said that he's blameless is just not a proper interpretation of that exchange. Mr. Kimball, why was that exchange relevant? Looking at it today, it's probably not relevant, but nobody objected to it. The government didn't object to it. This happens all the time, right? You get irrelevant evidence, but you've got to allow some rebuttal of it. All right. I accept that, but why should I? You've tried a lot of cases, right? I've tried a lot of cases, 200 juries probably. Nobody does that anymore, just young guys that don't get to trial. So you've seen that happen many, many times. I have. Why is this an example of that? Because I think that what you said, this court in Gomez, is that we're going to create a very, very close, tight filtering screen that you have to go through in order to put in 404B evidence. That evidence that Mr. Jacobs solicited was his having, based on his own statement here today, an unreally supported fear of losing the case. So he wanted to dirty up Mr. Curtis. That's what he put it in for. He claims it was for intent, but all it was to do was to say, this guy isn't so clean. I can tell you he's not so clean because just a couple of months ago he didn't pay his payroll taxes. And Judge Griesbach, I think, inappropriately says, well, juries don't know the difference between payroll taxes and income taxes, and I don't think a federal judge should say that. With all due respect to Judge Griesbach, there is a difference between those taxes. And I hope that you'll view this first, that the protocol that is established in Gomez was not addressed by either the court or by the U.S. attorney, and that it's not harmless, because the whole theory of the defense of this case was undermined by reason of the fact that he had some recent inappropriate reaction to a tax bill. Thank you.